UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON NEEL,

    Plaintiff,                               Case No. 10-11769

v.                                         Hon. Gerald E. Rosen

BEVERLY CAROLYN SEWELL
and DAVID EDWARD EVANS,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     November 30, 2011

PRESENT: Honorable Gerald E. Rosen
                       Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Brandon Neel commenced this action in this Court on April 30, 2010, seeking reimbursement from his father and step-grandmother, Defendants David Edward Evans and Beverly Carolyn Sewell, for physical and emotional injuries he allegedly suffered when a trash bag containing an aerosol can exploded after being placed on a fire while Plaintiff was assisting in disposing of garbage at Defendant Sewell's residence. This Court's subject matter jurisdiction rests upon the parties' diverse citizenship, with Plaintiff a resident of Michigan and Defendants residing in Tennessee. *See* 28 U.S.C. §

1332(a).

By motion filed on March 30, 2011, Defendant Evans seeks an award of summary judgment in his favor on Plaintiff's state-law claims for damages.[1] The parties agree that the resolution of this motion is governed by the family immunity doctrine as articulated by the Michigan Supreme Court in *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972). In *Plumley*, the Supreme Court largely abrogated this doctrine, thereby permitting a child to maintain a lawsuit against his parent for injuries allegedly suffered as a result of the parent's ordinary negligence. However, the court held that parental immunity remains available under two circumstances: (i) where the parent's allegedly negligent act involves an exercise of reasonable parental authority over the child; and (ii) where the allegedly negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. *Plumley*, 199 N.W.2d at 172-73.

In support of the present motion, Defendant Evans argues that he should be granted immunity pursuant to the first *Plumley* exception, where Plaintiff's claims against him rest upon the premise that he negligently supervised his child. Plaintiff, in contrast, contends that neither *Plumley* exception should apply here because, in his view, Defendant Evans' behavior reflected neither a reasonable exercise of parental authority nor an exercise of discretion with regard to the provision of food, clothing, housing,

---

[1] Co-Defendant Sewell has not moved for summary judgment, and the claims against her will go forward regardless of the disposition of the present motion.

medical and dental services, or other care.

Defendant Evans' motion has been fully briefed by the parties. Having reviewed the parties' briefs and accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant Evans' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL BACKGROUND

On March 8, 2009, Plaintiff Brandon Neel, along with his father, Defendant David Edward Evans, and his aunt, Tina McLean, was helping his step-grandmother, Defendant Beverly Sewell, clean out her house in Monroe County, Michigan. To dispose of excess garbage that had accumulated during this process, a fire was started in the backyard. While Plaintiff was placing crushed plastic milk jugs on the fire, a bag containing an aerosol can exploded in the fire. Plaintiff, who was 17 years old at the time, sustained severe burns to his face and arms, and received treatment at the University of Michigan Hospital.

Plaintiff testified at his deposition that he believed it was his father's idea to start the fire, and that the fire was actually started by either his father or his Aunt Tina. While Plaintiff and his aunt were adding bags to the fire, Plaintiff noticed a bullet on the ground. Upon finding the bullet, Plaintiff informed his Aunt Tina, who sent the other children in

the area into Defendant Sewell's house, and Plaintiff and his aunt proceeded to inspect the contents of each additional bag of garbage before throwing it on the fire.

Although nothing found in these bags triggered any concerns at the time, an item in one of the bags — now believed to be an aerosol can — exploded as Plaintiff was placing additional trash on the fire. As discussed below, Plaintiff gave somewhat conflicting testimony as to who placed the bag containing the aerosol can on the fire, and he generally was unsure who might have done so. It is undisputed, however, that Plaintiff and his Aunt Tina were the only people outside at the time of the accident, and that Defendant Evans was in the house.

Plaintiff attended special education classes in high school due to a learning disability, but he received his diploma. Plaintiff also has secured employment, and he testified that he feels physically and mentally capable of holding a full-time job. At his deposition, Plaintiff acknowledged his awareness that certain items could explode if thrown into a fire. Plaintiff further testified that he did not feel pressured to burn the trash bags, that he believed he was free to stop participating in this activity at any time, and that he felt he generally had the fire under control. Nonetheless, through the present suit, Plaintiff seeks to recover from his father, Defendant Evans, under the theory that his father negligently supervised him by failing to institute and maintain adequate standards for the safe disposal of flammable materials, and by failing to warn and instruct him regarding appropriate procedures to ensure his safety as he assisted in the disposal of hazardous materials.

### III. ANALYSIS

A.	The Standards Governing Defendant's Motion

Through the present motion, Defendant Evans seeks summary judgment in his favor on Plaintiff's claims of negligent supervision. Under the pertinent Federal Rule, "a party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought," and "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In this case, the parties are largely in agreement as to the operative facts, and the disposition of Defendant Evans' motion turns exclusively on a question of law — namely, whether, under these agreed-upon facts, Plaintiff's claims against his father are barred by the family immunity doctrine. Because this appeal to a legal immunity from liability is an affirmative defense as to which Defendant bears the burden of proof, Defendant may secure an award of summary judgment in his favor only upon a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation

5

marks, citation, and emphasis omitted). More generally, in determining a party's entitlement to summary judgment under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006).

**B.     The Record Establishes as a Matter of Law That Defendant Evans Is Protected From Liability Under the Family Immunity Doctrine.**

As the sole argument advanced in the present motion, Defendant Evans contends that, as Plaintiff's father, he is immune from liability under Michigan law for the claims of negligent supervision asserted against him in Plaintiff's complaint. In response, Plaintiff argues that the focus of the Michigan case law addressing parental immunity is on the alleged behavior of the parent, rather than the nature of the claim asserted against the parent, and he maintains that the behavior engaged in by Defendant Evans here falls outside the scope of the immunity recognized by the Michigan courts. As discussed below, the Court finds that Defendant Evans has the better of the argument on this point.

The Michigan courts have dealt extensively with parental immunity, recognizing as a general matter that parents do not enjoy across-the-board immunity from suits brought against them by their minor children. *See Spikes v. Banks*, 231 Mich. App. 341, 586 N.W.2d 106, 110 (1998). Most notably, in the seminal case of *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169, 172 (1972), the Michigan Supreme Court abrogated the common-law doctrine of parental immunity, holding that "[a] child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary

negligence of the parent." The court then adopted two exceptions to this rule, however, stating that the Michigan courts would continue to recognize parental immunity "(1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Plumley,* 199 N.W.2d at 172-73. Whether conduct falls within one of these two *Plumley* exceptions where parental immunity remains available is a question of law for the court. *Ashley v. Bronson,* 189 Mich. App. 498, 473 N.W.2d 757, 760 (1991).

In his present motion, Defendant Evans appeals exclusively to the first of these two exceptions, contending that Plaintiff's claims of negligent supervision arise solely from Defendant's actions as he exercised parental authority over his child. This first *Plumley* exception has been the subject of a number of decisions by the Michigan Court of Appeals. In *Paige v. Bing Construction Co.*, 61 Mich. App. 480, 233 N.W.2d 46 (1975), a two-year-old child died as a result of falling into a hole made by the defendant, Bing Construction. The defendant construction company brought a third-party complaint against the child's parents for negligent supervision, but the Court of Appeals upheld the trial court's dismissal of this third-party complaint. In so ruling, the court acknowledged the generality of the first *Plumley* exception, opining that it was "difficult to apply th[is] ambiguous exception to particular fact situations." *Paige,* 233 N.W.2d at 48. Nevertheless, the court concluded that this exception "does apply so as to bar a claim of

7

negligent parental supervision," reasoning that the "parental authority" referred to in *Plumley* extends beyond discipline and "includes the providing of instruction and education so that a child may be aware of dangers to his or her well being," and that the exercise of parental authority over a child "certainly includes the responsibility to supervise that child's behavior." 233 N.W.2d at 48-49.

The Court of Appeals reached a similar conclusion in *McCallister v. Sun Valley Pools, Inc.*, 100 Mich. App. 131, 298 N.W.2d 687 (1980), in which the 15-year-old plaintiff suffered permanent paralysis after diving into the deep end of the family swimming pool and striking his head and neck against the bottom of the pool. The plaintiff pursued several theories of negligence against his parents, including failure to properly look after a minor child, failure to warn a child of possible dangers, and failure to instruct the child on the safe and proper use of the pool. *McCallister,* 298 N.W.2d at 689. Following its reasoning in *Paige,* the court held that the parents' actions in purchasing and maintaining a family pool and instructing family members as to its use fell "within the management of family affairs," and therefore "involved an exercise of reasonable parental supervision" within the scope of the first *Plumley* exception. 298 N.W.2d at 691.

The Court of Appeals again addressed the first *Plumley* exception in *Wright v. Wright*, 134 Mich. App. 800, 351 N.W.2d 868 (1984), in which a mother brought suit against her child's father for injuries the child sustained when she accidentally shot herself in the foot during a fishing trip with her father. Once more, the theories of

recovery in the case rested on the premise that the father was negligent in overseeing his daughter on the day of the accident. Accordingly, relying on its prior decisions in *McCallister* and *Paige,* the court held that the claims against the father arose from his alleged negligence in his exercise of parental supervision, and thus fell squarely within the first *Plumley* exception. *Wright*, 351 N.W.2d at 871-72. In so ruling, the court distinguished cases falling outside this exception as "involv[ing] the direct commission of a wrongful act," whereas the father in the present case neither owned the gun nor left it in a place where his daughter could gain access to it. 351 N.W.2d at 871.

Any remaining uncertainty as to the proper scope of the first *Plumley* exception was resolved in the most recent Michigan Court of Appeals decision on this subject, *Mickel v. Wilson*, No. 289037, 2010 WL 3418897 (Mich. Ct. App. Aug. 31, 2010), *lv. app. denied,* 489 Mich. 947, 798 N.W.2d 22 (2011). In *Mickel*, the defendant father was attending a party with his three-year-old daughter, Jordyn, when she drowned in an inland lake. At the time of Jordyn's drowning, the father had left the beach area to use the restroom without specifically asking anyone to watch his daughter, believing that she was not left unattended because several other adults remained in the area. In addition, while the father was aware that Jordyn could not swim without a life preserver and the host of the party announced that life preservers were available, the father did not make his daughter wear one. Against this backdrop, the court found it undisputed that the plaintiff's claims rested upon the theory that the defendant father had "failed to properly supervise Jordyn." *Mickel,* 2010 WL 3418897, at *4. Accordingly, the Court of Appeals

9

affirmed the trial court's dismissal of the claims against the father on grounds of parental immunity, reading the pertinent Michigan case law as establishing that "[a] child's claim against his or her parents based upon negligent supervision is deemed to involve the exercise of parental authority over the child, and thus is barred." 2010 WL 3418897, at *4 (internal quotation marks and citations omitted).

Returning to the present case, Plaintiff's claims against Defendant Evans rest upon allegations that his father negligently failed to implement appropriate standards for the safe disposal of flammable materials, and that Defendant Evans negligently failed to supervise, warn, and instruct his minor son regarding procedures that would promote Plaintiff's safety as he disposed of trash in a fire. (*See* Complaint at ¶ 17.) It is clear that these allegations are intended to support a theory of negligent parental supervision. The conduct that the complaint identifies as negligent is a father's conduct in failing to properly watch over, warn, and instruct his minor son as he engaged in the hazardous activity of burning trash in a fire. The present facts, therefore, are precisely analogous to the man-made hole in *Paige*, the swimming pool in *McCallister*, the gun in *Wright*, and the drowning in *Mickel*. The dangerous instrumentality here is the fire, and the gravamen of Plaintiff's claims of negligence is the alleged failure of Defendant Evans to adequately supervise, warn, or otherwise take steps to protect his son from the risk of injury posed by this dangerous instrumentality. As uniformly established through the above-cited rulings of the Michigan courts, such claims of negligent supervision are properly viewed as involving the "exercise of reasonable parental authority over [a] child," *Plumley,* 199

10

N.W.2d at 172-73, and thus are barred by parental immunity.

Although Plaintiff attempts to distinguish this Michigan case law on a number of grounds, the Court is not persuaded by these claimed distinctions. First, while the Michigan courts have indicated that parental immunity is unavailable where a child is harmed as a result of the parent's "direct commission of a wrongful act," *Wright,* 351 N.W.2d at 871, the record here does not support this theory of liability. To the contrary, on virtually every key point regarding the circumstances surrounding Plaintiff's injury, Plaintiff gave inconsistent testimony and was ultimately unable to say who might have taken which actions. Plaintiff could not recall, for example, who came up with the idea to start a fire as a means of disposing of garbage, and he was uncertain who actually started the fire, testifying that he did not know but believed it was either his father or his Aunt Tina. (*See* Defendant's Motion, Ex. A, Plaintiff's Dep. at 60, 62.) Similarly, while Plaintiff stated at one point in his deposition that his father had thrown the last bag on the fire before the explosion, (*see id.* at 11-12), he later testified that he did not "know for sure" who had placed the bag on the fire that exploded and caused his injuries, and he recalled that he and his Aunt Tina put most or all of the bags on the fire and that he himself "probably could have" thrown the bag on the fire that triggered the subsequent explosion, (*id.* at 68, 101, 104).[2] Under this record, where the material facts evidently lie

---

[2]More generally, Plaintiff testified that he did not know what caused the explosion in which he was injured, and that his understanding on this point was based on his father's statement that an aerosol can had exploded in the fire. (*See id.* at 85, 97-98, 109-10.)

outside the personal knowledge of any witness, and where Plaintiff's theory of wrongdoing by his father rests upon mere speculation and conjecture, a reasonable trier of fact could not conclude that Plaintiff's injuries were attributable to the wrongful acts of his father. *See Skinner v. Square D. Co.,* 445 Mich. 153, 516 N.W.2d 475, 480-81 (1994).[3]

Next, to the extent Plaintiff suggests that the particular conduct engaged in by his father cannot qualify as the exercise of "reasonable parental authority" within the meaning of the first *Plumley* exception, the Michigan case law defeats any such attempt to limit the availability of this exception to parents whose actions are deemed "reasonable." In particular, the Michigan courts have emphasized that the "[p]roper application of the [first] *Plumley* exception[] requires a determination, not of the reasonableness of defendant's conduct, but rather of the scope of 'reasonable parental authority'" as this phrase is used in *Plumley. Mayberry v. Pryor,* 134 Mich. App. 826, 352 N.W.2d 322, 325 (1984), *rev'd on other grounds,* 422 Mich. 579, 374 N.W.2d 683 (1985); *see also Ashley,* 473 N.W.2d at 760. This distinction was further clarified in *Thelen v. Thelen,* 174 Mich. App. 380, 435 N.W.2d 495, 496-97 n.1 (1989), which criticized a pair of earlier decisions for "focusing on the *reasonableness* of the parents'

---

[3]Similarly, while Plaintiff alleges in his complaint that Defendant Evans was "gross[ly] negligen[t]," (Complaint at ¶ 18), the record fails to support this characterization, but instead features sizable evidentiary gaps as to Defendant Evans' degree of involvement in the events surrounding Plaintiff's injury. In any event, the Michigan Court of Appeals has held that the availability of parental immunity does not turn upon the characterization of a parent's conduct as constituting ordinary versus gross negligence. *See Mickel,* 2010 WL 3418897, at *5; *Rich v. Dunn,* No. 201891, 1999 WL 33447018, at *2 (Mich. Ct. App. Apr. 9, 1999).

conduct," rather than asking whether "the *type* of activity the parent was involved in at the time of the alleged negligence" fits within one of the two *Plumley* exceptions. The Michigan Court of Appeals then reiterated this point in its recent decision in *Mickel*:

> The word "reasonable" does not modify the phrase, "alleged negligent act," but the phrase "parental authority over the child." We conclude courts should not focus on the reasonableness of the parent's actions to determine if there is parental immunity. Thus, we need only address whether the alleged negligent act falls within one of the *Plumley* exceptions.

*Mickel,* 2010 WL 3418897, at *4 (footnote omitted). Likewise, in this case, because the Court has determined that the type of conduct allegedly engaged in by Defendant Evans qualifies as the "exercise of reasonable parental authority" within the meaning of *Plumley,* there is no need to inquire whether this conduct was reasonable.

For much the same reason, the Court declines Plaintiff's invitation to assess the reasonableness of Defendant Evans' conduct by reference to Plaintiff's specific "level of functioning." (*See* Plaintiff's Response Br. at 8.) In particular, Plaintiff suggests that his father's actions in supervising him should be evaluated in light of the fact that, at the time of the incident, Plaintiff was in special education classes and functioning at approximately a third grade level. In essence, then, Plaintiff asks this Court to carve out a special exception to the *Plumley* exceptions for minors with learning disabilities. Neither the Michigan Supreme Court nor the intermediate state appellate courts have chosen to apply different standards for the exercise of "reasonable parental authority" that depend on a child's age or level of functioning. To the contrary, and as discussed above, the

Michigan courts have focused their attention on the type of activity in which the parent was engaged at the time of his child's injury, and not the reasonableness of the parent's actions or the child's need for particularly close supervision.[4]

Plaintiff next turns his focus to the second *Plumley* exception, maintaining that Defendant Evans is ineligible for parental immunity because "[t]he activities of cleaning Ms. Sewell's home were not related to the provision of food, clothing, housing, medical and dental services and other care to Plaintiff." (Plaintiff's Response Br. at 6.) As observed earlier, however, Defendant Evans has appealed to the first *Plumley* exception, and not the second. The Michigan Court of Appeals has rejected a similar attempt to merge the showings required to trigger the two *Plumley* exceptions, holding that "the first *Plumley* exception bars claims of negligent supervision, regardless of whether the negligent supervision is related to provision of the items in the second *Plumley* exception." *Rich, supra,* 1999 WL 33447018, at *2. The court recognized that to hold otherwise would render the first exception "mere surplusage, as all conduct which falls under the first *Plumley* exception would also fall under the second." *Rich,* 1999 WL 33447018, at *2. Applying this logic here, the Court rejects Plaintiff's contention that the first *Plumley* exception applies only to the provision of items listed in the second *Plumley* exception.

---

[4]For what it is worth, the record does not suggest that Plaintiff required especially careful supervision. Plaintiff graduated from high school, cares for himself, has worked two jobs, and feels capable of holding a full-time job. Moreover, Plaintiff testified that he searched each bag of trash before burning it, based on his awareness that certain items could explode in a fire.

14

Finally, Plaintiff invites the Court to adopt the view of the dissenting judge in *Mickel,* 2010 WL 3418897, at *6-*9 (Gleicher, J., dissenting), that the Michigan courts should completely abolish the doctrine of parental immunity.  Yet, just as the majority in *Mickel* noted that it was not at liberty to overrule or modify the Michigan Supreme Court's decision in *Plumley, see Mickel,* 2010 WL 3418897, at *4 n.2, this Court likewise is bound by the decision of Michigan's highest court on an issue of state law, *see Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 517 (6th Cir. 2001).  Moreover, and as discussed earlier, the Michigan Court of Appeals has repeatedly ruled as to the circumstances where parental immunity remains available under the *Plumley* exceptions, and this Court must follow these Michigan appellate court rulings unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *Ziegler,* 249 F.3d at 517 (internal quotation marks and citations omitted).  Certainly, the views of the dissenting judge in *Mickel* cannot serve as such "persuasive data," where the Michigan Supreme Court has not seen fit to weigh in on any of the numerous Michigan Court of Appeals decisions issued in the wake of *Plumley*, and where Michigan's highest court recently declined an opportunity to grant leave to appeal in *Mickel* and revisit the availability and scope of parental immunity under Michigan law.  *See Mickel v. Wilson,* 489 Mich. 947, 798 N.W.2d 22 (2011).  In the face of all this, the Court has no difficulty in discerning the state of the law in Michigan concerning  parental immunity, and this law dictates that Plaintiff's claims against Defendant Evans are barred.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant David Edward Evans' March 30, 2011 motion for summary judgment (docket #19) is GRANTED.

                    s/Gerald E. Rosen
                    Chief Judge, United States District Court

Dated: November 30, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2011, by electronic and/or ordinary mail.

                    s/Ruth A. Gunther
                    Case Manager